OPINION OF THE COURT
Memorandum.
Order unanimously affirmed without costs.
In this legal malpractice action, plaintiff alleged that she sustained damages in the amount of $12,085 due to defendant’s failure to record a mortgage upon real property, thereby allowing a federal tax lien in the amount of $12,426.20 to become senior to her mortgage and to be satisfied upon the foreclosure sale of the real property securing the mortgage. (The amount of surplus generated from the sale was significantly less than the amount of plaintiffs mortgage.) Plaintiff moved for and was awarded summary judgment upon the complaint.
On her motion for summary judgment, plaintiff established her entitlement to judgment as a matter of law by demonstrating that defendant negligently failed to record the second mortgage whose drafting and execution he had been retained to oversee, that a federal tax lien gained priority over the mortgage as a result of his failure to record the mortgage, and that she sustained losses of $12,426.20 in proceeds from an eventual foreclosure sale as a result of the federal lien’s priority (see generally Ippolito v McCormack, Damiani, Lowe & Mellon, 265 AD2d 303 [1999]). Defendant failed to raise any triable issue of fact in response to plaintiffs showing, or to raise an acceptable *3 excuse for failing to do so (see Zuckerman v City of New York, 49 NY2d 557, 560 [1980]). Defendant’s allegations that discovery could reveal evidence to raise such an issue amounts to “mere . . . expressions of hope,” insufficient to defeat plaintiff’s properly laid motion (id. at 562).
Contrary to defendant’s assertion, the federal lien would have been junior to the second mortgage had he exercised proper diligence in recording the mortgage. Although the federal lien arose on or about September 11, 2000, prior to the date of execution of the mortgage, such a lien “shall not be valid as against any purchaser [or] holder of a security interest. . . until notice thereof which meets the requirements of subsection (f) [of 26 USC § 6323] has been filed by the Secretary” (26 USC § 6323 [a]). These requirements are, as relevant here, that the interest be recorded at the appropriate office, as designated by the laws of the state involved, of the territorial subdivision in which the property subject to the lien is located. In order for the federal government to assert priority, it had to file notice of its interest. It did so some 15 months after plaintiffs mortgage arose, and still prior to the recording of said mortgage.
Also contrary to defendant’s contention, the lien would not have become senior to the mortgage regardless of when it was filed because the borrower failed to join the United States as a party to the foreclosure proceeding. 26 USC § 7424 provides only that the denial of a motion by the United States to intervene in such a proceeding “shall have no effect upon such lien.” The federal statutes governing the priority and effectiveness of federal liens all turn upon notice, and notice is defined as a filing done at the proper office pursuant to state law (26 USC § 6323 [f]). In order for plaintiffs mortgage to have priority over the federal tax lien, it had to be recorded before the notice of federal tax lien was filed. Defendant had 15 months to accomplish this, and failed to do so. While the Internal Revenue Service (IRS) lien would continue to exist if the government were not joined in the foreclosure proceeding, IRS would have been a junior lienor, and plaintiff would have received the entire surplus proceeds of the foreclosure sale.
Nor does defendant’s argument that plaintiff suffered no actual loss have merit. Marine Midland Bank-Cent. v Auburn Inn (107 AD2d 1036 [1985]), upon which defendant relies to support his theory that plaintiff, having resold the property at a profit, suffered no actual damages, does not stand for that proposition at all. The Appellate Division, Fourth Department, *4 originally awarded plaintiff in that case the amount garnered at the foreclosure sale as damages for defendants’ malpractice in failing to file a UCC-1 financing statement, allowing two tax hens to become senior. In this later proceeding, the only issue was the proper amount of a deficiency judgment from which plaintiff’s losses, claimed as damages, were calculated, not plaintiffs entitlement to damages. However much the plaintiff herein may have realized upon the sale, it is still over $12,000 less than she would have received absent defendant’s negligence.
Finally, defendant failed to raise any issue that plaintiff was contributorily negligent by failing to mitigate damages. Defendant suggests that the borrower had defaulted on the promissory note for which the mortgage served as security, and that plaintiff should have sued on the note, characterizing this course as generating a surefire judgment for approximately $92,000. Leaving aside the question of whether plaintiff could ever collect a judgment of this size against defendants who were in the process of losing their home, the mortgage itself was taken as security for this very note. Had defendant properly recorded it, it would have served this purpose some $12,000 more effectively than it did in the circumstances.
Pesce, EJ., Golia and Rios, JJ., concur.